**NOT YET SCHEDULED FOR ORAL ARGUMENT**

*In the*

# United States Court of Appeals

*for the*

# District of Columbia Circuit

13-5119

COAL RIVER ENERGY, LLC,

*Plaintiff-Appellant,*

v.

SALLY JEWELL, Secretary, U.S. Department of the Interior;
UNITED STATES DEPARTMENT OF THE INTERIOR,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA CASE NO. 11-CV-01648-BJR
JUDGE BARBARA J. ROTHSTEIN

## BRIEF OF PLAINTIFF-APPELLANT

STEVEN H. BECKER
BECKER LAW FIRM PLLC
600 Third Avenue
New York, New York 10016
(212) 499-9098

JOHN Y. MERRELL, JR.
MERRELL & MERRELL, P.C.
1495 Chain Bridge Road
Suite 201
McLean, Virginia  22101
(703) 790-8440

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

(A) **Parties and Amici.**

The following parties appeared before the district court: Plaintiff-Appellant, Coal River Energy, LLC, and Defendants, Ken Salazar, Secretary, and United States Department of the Interior. Appearing before this Court are Plaintiff-Appellant Coal River Energy, LLC, and Defendants-Appellants, Sally Jewell, Secretary, and United States Department of the Interior. Coal River Energy, LLC is engaged in the business of producing and exporting coal. It has no parent company, and no publicly held company owns 10% or more of its shares.

(B) **Rulings Under Review.**

The ruling at issue in this Court is the March 20, 2013 opinion and order of Judge Barbara J. Rothstein, of the United States District Court for the District of Columbia, granting judgment dismissing the complaint in Coal River Energy, LLC v. United States Department of the Interior and its Secretary, Kenneth Salazar. Copies of this opinion and order are located in the Appendix, at A-12 and A-13. No official citation yet exists.

(C) **Related Cases.**

The case on review was not previously before this Court.

There are no related cases, as defined in Circuit Rule 28(a)(1)(C), currently pending before this or any other court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF CONTENTS......................................................................... ii

TABLE OF AUTHORITIES .................................................................iv

GLOSSARY.........................................................................................1

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF ISSUES ...................................................................2

PERTINENT STATUTES AND REGULATIONS ...................................2

STATEMENT OF THE CASE................................................................2

    I.     The Statute, Regulations and Application to Coal River .....................2

    II.    The Proceedings Below.................................................................8

    III.   Cases Brought by Other Producers in CFC, Pursuant to
           Tucker Act Jurisdiction, Seeking Refunds of Reclamation
           Fees Imposed on Coal When Sold for Export......................10

STATEMENT OF FACTS ...................................................................14

SUMMARY OF ARGUMENT .............................................................15

STANDARD OF REVIEW ..................................................................19

ARGUMENT .....................................................................................20

    I.     SMCRA DID NOT WITHDRAW FEDERAL QUESTION
           JURISDICTION OVER AN APA CHALLENGE TO
           AGENCY ACTION TAXING EXPORTS ..........................................20

           A.    Withdrawal of Section 1331 Jurisdiction, Particularly
                 Over Constitutional Claims, Requires Clear Expression
                 in Section 1276(a)(1) ..............................................21

           B.    Section 1276(a)(1) Did Not Withdraw § 1331
                 Jurisdiction Over Coal River's Challenge to OSM's
                 Unconstitutional Application of A Facially Valid
                 Regulation ..............................................................23

       1.    The Statutory Language Does Not Withdraw Jurisdiction...................................................................23

       2.    The Case Law Interpreting The SMCRA Has Held That The Act Was Not Intended to Withdraw Other Jurisdictional Grants Consistent With §1276 ..................................................................25

II.     Coal River's Claim Under §1276 Jurisdiction Was Timely ..............35

    A.    The "Arising After" Grounds Claim Was Timely ...................35

       1.    The Plain Language of §1276 Precludes Reassertion of a 60-Day Filing Period for "Arising After" Claims .................................................35

       2.    The District Court Substituted Its Own Judgment for that Expressed by Congress in the Plain Language of the Statute .................................................38

    B.    The 60-day Filing Period is Not Jurisdictional.........................42

       1.    Section 1276's Filing Period Not "Typed Jurisdictional" .................................................42

       2.    Presumption of Equitable Tolling .................................45

       3.    The 60-day Filing Period Does Not Limit a Challenge to the Application of the Regulation, Even If Its Success Requires the Invalidation of the Regulation .................................................48

III.    This Panel Should Rule That OSM Imposes the Tax On Coal When Sold In Violation of the Export Clause .................................52

CONCLUSION .................................................57

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C.Cir. 2011).......................................................19

*American Road & Transp. Builders Ass'n v. E.P.A.*,
  588 F.3d 1109 (D.C. Cir. 2009).......................................37, 43, 50

*Amerikohl Mining, Inc. v. United States*,
  899 F.2d 1210 (Fed. Cir. 1990) ..............................................26, 27

*Aracoma Coal Company v. United States*,
  2013 WL 3779895 (July 22, 2013).............................................14

*Arbaugh v Y&H Corp.*,
  546 U.S. 500 (2006)....................................................................43

*Barr v. Clinton*,
  370 F.3d 1196 (D.C. Cir. 2004)...................................................19

*Blanchette v. Connecticut General Ins. Corporations*,
  419 U.S. 102 (1974)...............................................................29, 31

*Boos v. Barry*,
  485 U.S. 312 (1988)....................................................................23

*Bowen v. Michigan Academy*,
  476 U.S. 667 (1986)....................................................................22

*Califano v. Sanders*,
  430 U.S. 99 (1977)................................................................21, 22

*Cedars-Sinai Medical Center v. Shalala*,
  125 F.3d 765 (9th Cir. 1997) ......................................................46

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979)....................................................................24

_____

Authorities Upon Which We Chiefly Rely Are Marked with Asterisks.

iv

*Connecticut Nat. Bank v. Germain*,
    503 U.S. 249 (1992)..................................................................39

*Consolidation Coal Co. v. United States*,
    351 F.3d 1374 (Fed. Cir. 2003) ........................................11, 25, 52

*Consolidation Coal Co. v. United States*,
    54 Fed. Cl. 14 (2002) .............................................................11

*Consolidation Coal Co. v. United States*,
    64 Fed.Cl. 718 (2005)....................................................... 10-11, 12

*Consolidation Coal Company, et al. v. United States*,
    No. 01-254C .......................................................................10

*Drummond Coal Co. v. Hodel*,
    610 F. Supp. 1489 (D.D.C. 1985), *aff'd*, 796 F.2d 503
    (D.C. Cir. 1986), *cert. denied*, 107 S. Ct. 1593 (1987) ...........6, 7, 12, 52, 53,
                                                                        54, 56

*Envt'l Defense v. Duke Energy Corp.*,
    549 U.S. 561 (2007).......................................................16, 32, 33

*Gonzalez v. Thaler*,
    132 S.Ct. 641 (2012)......................................................43, 44, 47

*Hanauer v. Reich*,
    82 F.3d 1304 (4th Cir.1996) ...................................................29

*Harris v F.A.A.*,
    353 F.3d 1006 (D.C. Cir. 2004)..............................................45, 46

*Holmes Limestone Co. v. Andrus*,
    655 F.2d 732 (6th Cir. 1981) ..................................................22

*Independent Community Bankers of America v. Board of Governors*,
    195 F.3d 28 (D.C.Cir. 1999)................................................48, 49

*Irwin v. Department of Veterans Affairs*,
    498 U.S. 89 (1990)......................................................45, 46, 47

*JEM Broadcasting Co. v. FCC*,
    22 F.3d 320 (D.C.Cir.1994)....................................................48

*John R. Sand & Gravel Co. v. United States*,
    552 U.S. 130 (2008)........................................................46, 47

*Johnson v. Robison*,
 415 U.S. 361 (1974)....................................................................21, 22

*Lincoln v. Vigil*,
 508 U.S. 102 (1993)...........................................................................21

*Morton v. Mancari*,
 417 U.S. 535 (1974)...........................................................................29

*National Air Traffic Controllers Ass'n v. Federal Service Impasses Panel*,
 606 F.3d 780 (D.C. Cir. 2010)..........................................................19

*National Mining Ass'n v. U.S. Dep't of the Interior*,
 70 F.3d 1345 (D.C. Cir. 1995)........................... 18, 34, 39, 41, 42, 43, 45, 46,
 49, 52

*Nat'l Mining Ass'n v. Office of Hearings & Appeals*,
 777 F. Supp. 2d 164 (D.D.C. 2011)..................................................38

*NetCoalition v. S.E.C.*,
 715 F.3d 342 (D.C. Cir. 2013)..........................................................51

*NLRB Union v. Fed. Labor Relations Auth.*,
 834 F.2d 191 (D.C.Cir.1987).....................................................50, 51

*NRDC v. NRC*,
 666 F.2d 595 (D.C.Cir.1981).....................................................48, 49

*Ohio River Valley v. Kempthorne*,
 473 F.3d 94 (4th Cir. 2006)........................................................28, 29

*Oryszak v. Sullivan*,
 576 F.3d 522 (D.C. Cir. 2009)..........................................................24

*P & V Enters. v. United States Army Corps of Eng'rs*,
 516 F.3d 1021 (D.C.Cir.2008).....................................................50, 51

*Patent Office Prof'l Ass'n v. Federal Labor Rels. Auth.*,
 128 F.3d 751 (D.C.Cir.1997).............................................................20

*Piersall v. Winter*,
 435 F.3d 319 (D.C.Cir.2006).............................................................19

*Rust v. Sullivan*,
 500 U.S. 173 (1991)...........................................................................30

vi

*Tug Valley v. Watt,*
    703 F.2d 796 (4th Cir.1983) ........................................................27

*United States v. Consolidation Coal Co.,*
    No. 82-1077, slip op. (S.D. W.Va. Nov. 7, 1985) .........................11

*United States v. IBM,*
    517 U.S. (1996)...........................................................................53

*\*United States v. Linick,*
    195 F.3d 538 (9th Cir. 1999) .....................................................30

*United States v. Salerno,*
    481 U.S. 739 (1987).....................................................................30

*United States v. Thirty-seven Photographs,*
    402 U.S. 363 (1971).....................................................................21

*\*United States v. U.S. Shoe Corp.,*
    523 U.S. 360 (1998).....................................................................53

*Ward v. Rock Against Racism,*
    491 U.S.781 (1989)......................................................................30

*Washington v. Garrett,*
    10 F.3d 1421 (9th Cir. 1993) .....................................................46

*Webster v. Doe,*
    486 U.S. 598 (1988).....................................................................23

*Weinberger v. Salfi,*
    422 U.S. 749 (1975).....................................................................22

*Wyodak Resources Development Corporation v. United States,*
    637 F.3d 1127 (10th Cir. 2011) ..............................................6, 55

## Statutes & Other Authorities:

U.S. Const. art. I, § 9, Cl. 5................................................... 14-15, 53

5 U.S.C. § 701(a)(1)................................................................20

5 U.S.C. § 702.............................................................1, 8, 20

5 U.S.C. § 704.............................................................1, 8, 20

28 U.S.C. § 1294(1) ..................................................................1

28 U.S.C. § 1331 .................................................... 1, 8, 15, 16, 17, 20, 21, 23, 24, 28, 30, 31, 34, 42, 47

28 U.S.C. § 2201-2202 .................................................................................. 1, 8

30 U.S.C. § 1202 ................................................................................................ 3

30 U.S.C. § 1211(c)(1)-(2) .................................................................................. 3

30 U.S.C. § 1232 ............................................................................................. 2, 3

30 U.S.C § 1232(a) .......................................................................................... 3, 5

30 U.S.C. § 1232 (b) ........................................................................................... 4

*30 U.S.C. § 1276 ................................................. 9, 10, 15, 16, 20, 21, 23, 24, 25 26, 28, 29, 31, 33, 34, 35, 37, 38, 42, 43, 44, 45, 46, 47, 49, 51, 52

30 U.S.C. § 1276(a)(1) ........................................... 1, 2, 8, 9, 16, 17, 18, 20, 21, 23, 24, 25, 26, 27, 28, 30, 32, 34, 35, 36, 38, 41

*42 U.S.C. § 7607(b) .......................................................................................... 16

42 U.S.C. § 7607(b)(1) .................................................................................. 34, 37

42 U.S.C. § 7607(b)(2) .................................................................................. 32, 33

Pub. L. No. 95-87, 91 Stat. 445 ........................................................................... 2

42 Fed. Reg. 44,956 ........................................................................................... 4

42 Fed. Reg. 62,713-62,716 ................................................................................ 4

43 Fed. Reg. 49,932, 49,940 ............................................................................... 4

47 Fed. Reg. 28574, 28577 ................................................................................. 4

53 Fed. Reg. 19718 ............................................................................................ 5

Fed. R. Civ. P. 12(c) ......................................................................................... 19

330 C.F.R. § 705.5 ............................................................................................ 27

30 C.F.R. Part 870 .............................................................................................. 3

*30 C.F.R. § 870.12 .......................................................................................... 35

*30 C.F.R. § 870.12(a)-(b) ............................................................................. 4, 14

viii

*30 C.F.R. § 870.12(b) ...........................................................................4

*30 C.F.R. § 870.12(b)(1)......................................................................4

*30 C.F.R. § 870.12(b)(3)....................................................................5, 55

*30 C.F.R. § 870.12(b)(3)(i)................................................................5, 6

30 C.F.R. § 870.15(a)-(b)......................................................................4

The Clean Air Act Amendments of 1977, P.L. 95-95 .............................36

Clean Air Act Amendments of 1977, Section 305(c)(3) .........................37

## GLOSSARY

APA                     Administrative Procedure Act

CAA                     Clean Air Act

OSM                     Office of Surface Mining Reclamation and Enforcement,
                        of the United States Department of the Interior

SMCRA                   Surface Mining Control and Reclamation Act of 1977

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction (a) pursuant to 28 U.S.C. § 1331 (federal question), in connection with plaintiff's action under 5 U.S.C. §§ 702, 704 (Administrative Procedure Act—judicial review of final agency action), and 28 U.S.C. § 2201-2202 (Declaratory Judgment Act), and (b) pursuant to 30 U.S.C. § 1276(a)(1) (Surface Mining Control and Reclamation Act).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1294(1).

On March 20, 2013, the United States District Court issued an order granting defendants' motion for judgment dismissing the complaint. Plaintiff filed a Notice of Appeal on April 18, 2013.

The order from which plaintiff appealed was final.

## STATEMENT OF ISSUES

1.    Whether Section 526(a)(1) of the Surface Mining Control and Reclamation Act of 1977 (SMCRA), 30 U.S.C. § 1276(a)(1), withdraws or limits federal question jurisdiction over an APA challenge against Defendants' imposition of a tax on exports.

2.    Whether a petition for review of an action subject to judicial review under 30 U.S.C. § 1276(a)(1), based solely on grounds arising after the sixtieth day following such action, must be filed within sixty days after those grounds arise.

3.    Whether OSM imposes the reclamation fee on coal when sold for export, in violation of the Export Clause.

## PERTINENT STATUTES AND REGULATIONS

The pertinent statutes and regulations are provided in the Addendum to this brief.

## STATEMENT OF THE CASE

### I.  The Statute, Regulations and Application to Coal River

Congress enacted the reclamation fee at issue in this case as § 402 of the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), Pub. L. No. 95-87, 91 Stat. 445. *See* 30 U.S.C. § 1232. Among other things, SMCRA aims "to – (a) establish a nationwide program to protect society and the environment from

2

the adverse effects of surface coal mining operations; . . . [and] (e) assure that adequate procedures are undertaken to reclaim surface areas as contemporaneously as possible with the surface coal mining operations; . . . ." 30 U.S.C. § 1202. Acting through OSM, the Secretary of the Interior must "administer the programs for controlling surface coal mining operations . . . , [and] publish and promulgate such rules and regulations as may be necessary to carry out the purposes and provisions of this chapter [25]." 30 U.S.C. § 1211(c)(1)-(2). Implementing regulations promulgated by OSM are codified in 30 C.F.R. Part 870.

The reclamation program for mines abandoned prior to SMCRA's enactment is funded by payments of "reclamation fees" on coal produced by surface or underground mining. *See* 30 U.S.C. § 1232. Section 1232 provides:

> All operators of coal mining operations subject to the provisions of this chapter shall pay . . . a reclamation fee of 28 cents per ton of coal produced by surface coal mining and 12 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, except that the reclamation fee for lignite coal shall be at a rate of 2 per centum of the value of the coal at the mine, or 8 cents per ton, whichever is less.

30 U.S.C § 1232 (a).

In December 1977, OSM promulgated final regulations imposing the reclamation fee.[1] Those regulations provide, in pertinent part:

> (a) The [coal] operator shall pay a reclamation fee on each ton of coal produced for sale, transfer, or use, including the products of in situ mining.
>
> (b) The fee shall be determined by the weight and value [of the coal] at the time of initial bona fide sale, transfer of ownership, or use by the operator.

30 C.F.R. § 870.12(a)-(b).

Producers must report the tonnage of coal sold and pay a reclamation fee based on such tonnage sold on a quarterly basis. *See* 30 U.S.C. § 1232 (b); 30 C.F.R. § 870.15(a)-(b). OSM expressly rejected a proposal that would have based the reclamation fee on the weight and value of coal at the time it was extracted from the ground. *See* 42 Fed. Reg. 44,956 (Sept. 7, 1977).

OSM revisited the issue in 1982 "to clarify the point in time of fee determination." 47 Fed. Reg. 28574, 28577 (June 30, 1982). OSM specified that the requirement that the "fee shall be determined . . . at the time of the initial bona fide sale, transfer of ownership, or use. . .." referred to the "first transaction or use of the coal by the operator immediately after it is severed, or removed from a reclaimed coal refuse deposit," 30 C.F.R. § 870.12(b), (b)(1) (1983). Only "the

---

[1] OSM's reclamation fee regulations originally appeared at 42 Fed. Reg. 62,713-62,716 (Dec. 13, 1977). OSM subsequently renumbered its regulations and the reclamation fee regulations now appear at 43 Fed. Reg. 49,932, 49,940 (Oct. 25, 1978). All citations to the regulations herein are to the current regulations.

actual gross weight" of the processed coal that is sold—at the time of its sale—matters for purposes of imposing the tax. *Id.* § 870.12(b)(3).

The distinction between imposing the tax upon sale rather than initial extraction is important because the tax depends on the coal's weight and value, 30 U.S.C. § 1232(a), both of which usually change between extraction and sale.

OSM's regulations thus specified that "[i]mpurities, including water, that have not been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator shall not be deducted from the gross weight." *Id*. § 870.12(b)(3)(i). Likewise, the revised regulations provided that the weight of any water or other impurities accumulating in or added to coal during processing between extraction and sale would be taxed. *Id.* § 870.12(b)(3)(i) (1983).[2]

Consistent with its treatment of the sale as the event triggering the tax, OSM proposed to apply the new rate to coal that was subsequently sold, even if that coal had been extracted before the new rate became effective, when it anticipated a rate change in 2004. *See* 69 Fed. Reg. 56,128 (Sept. 17, 2004). Subsequent changes in

---

[2] The Secretary subsequently amended the regulations to allow a deduction in weight for "excess moisture," to bring the fee methodology into accord with that used by the Internal Revenue Service in assessing the Black Lung tax. *See* 53 Fed. Reg. 19718 (May 27, 1988). The Secretary did not, however, alter his position that the value of the coal will be determined as of the time of sale, and that the coal's taxable weight will not include any impurities present at the time of extraction, so long as they are removed by the time of sale. Likewise, any impurities adhering or added after extraction will be included in the taxable weight. *See* 30 C.F.R. § 870.12(b)(3)(i).

5

the rate have tax have also been keyed to when the coal is sold, rather than when it is extracted. See OSM Payer Handbook-October 2011. Add- 9-10.

Finally, OSM has consistently taken the position that the applicable tax rate is measured by the quality of the coal at the time of sale, rather than extraction. Adjudicating whether a taxpayer was entitled to pay the fee at a lower rate for lignite comingled with higher-rate non-lignite, the Tenth Circuit observed that:

> OSM [has taken] the position that SMCRA regulations require the reclamation fee to be calculated "at the time of the initial bona fide sale…," and not while coal remains in the ground. Because any lignite coal mined by Wyodak is comingled with non-lignite coal prior to sale, OSM concluded Wyodak did not qualify for the lower reclamation fee.

*Wyodak Resources Development Corporation v. United States*, 637 F.3d 1127, 1130 (10th Cir. 2011).

In this Circuit too, the reclamation fee is considered to be imposed when the coal is sold, rather than when it is extracted. In *Drummond Coal Co. v. Hodel*, 610 F. Supp. 1489 (D.D.C. 1985), *aff'd*, 796 F.2d 503 (D.C. Cir. 1986), *cert. denied*, 107 S. Ct. 1593 (1987), a coal operator challenged the validity of the 1982 amendment to OSM's regulation, § 870.12(b)(3)(i), on the ground that it "exceed[ed] the Secretary's statutory authority because it include[d] within the material taxed 'excess' moisture attributable to post-excavation rainfall or

6

washing, which Drummond assert[ed] is not properly regarded as part of 'coal.'"

796 F.2d at 504.

To determine whether OSM's regulation was *ultra vires*, the *Drummond* courts were required to interpret the meaning of the phrase "coal produced." The district court observed that:

> The term "produced" is ambiguous. "Production" could reasonably be interpreted to include the entire process of extracting and selling coal, complete from pit to buyer's door, or it could refer solely to the process of extraction. The latter interpretation would support the conclusion that impurities added after extraction, such as moisture, should not be taxed. The former interpretation would imply that the gross product sold to the buyer—even if it contains impurities and moisture—should serve as the basis for taxation.

*Drummond*, 610 F. Supp. at 1497 (emphasis in original). The district court upheld OSM's regulation because it "adopt[ed] the first of the two possible interpretations of section 1232," *id*. at 1498, namely, that "coal produced" includes "the entire process of extracting and selling coal." *Id*. at 1497. This Court affirmed. Like the district court, this Court found the meaning of the phrase "coal produced" to be ambiguous. 796 F.2d at 505. And, like the district court, this Court found that OSM was entitled to *Chevron* deference in its construction of "coal produced" to encompass the process of extraction through sale. 796 F.2d at 508.

The *Drummond* decisions thus confirm that OSM's regulations have long-imposed the reclamation fee on coal through its <u>sale</u>, rather than solely on its

7

extraction. Indeed, for three decades, OSM has used its rulemaking authority broadly to interpret and apply the term "coal produced." The reality of that regulatory course of action is indelible, and has resulted in the taxation of export sales in violation of the Export Clause. It cannot be erased by the Federal Circuit's recent decision (see Argument, *infra*, at Section III.), that "coal produced" must mean something different after all.

## II. The Proceedings Below

Coal River commenced this action on September 13, 2011, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, and federal question jurisdiction, 28 U.S.C. 1331, as well as under the SMCRA, 30 U.S.C. § 1276(a)(1). A-6. It sought judgment declaring the coal tax unconstitutional as-applied to coal sold for export, and enjoining further imposition of this tax.[3] Its complaint relies on this Court's holding in *Drummond* that defendants have imposed the tax through the point of sale, rather than solely at the point of extraction, as the government now contends. This distinction is crucial, because when coal is sold for export, it is typically in the export stream and thus entitled to Export Clause protection.

---

[3] Coal River hereby abandons its claim for injunctive relief, and states its intention to seek leave to amend its complaint to withdraw that claim upon remand of this case to the district court. Coal River's Argument, Point III, *infra.*, is premised on its abandonment of the injunctive relief claim, and should relate solely to its claim for Declaratory Judgment.

On March 23, 2012, defendants moved for judgment on the pleadings dismissing Coal River's complaint for lack of subject matter jurisdiction. Invoking 30 U.S.C. § 1276(a)(1) , they contended that Coal River, which did not exist when the regulations were promulgated over 30 years ago, failed to participate in the administrative proceeding or file suit in this Court within 60 days of promulgation, and thus that Coal River had no right to seek relief at any time from the tax's continuing application.

Coal River argued that it did not challenge the facial validity of the regulations, but rather had argued that the application of those regulations to coal sold in the export stream was unlawful. Moreover, Coal River argued that 30 U.S.C. § 1276(a)(1) did not withdraw federal question jurisdiction because Coal River did not exist until 2003 or export coal until 2008, and thus should be permitted either by equitable tolling or the authorization under Section 1276(a)(1) to file a petition based on grounds arising solely after the 60-day period following the promulgation of the regulations.

On March 20, 2013, the district court issued an order and opinion dismissing Coal River's complaint. A-12, A-13. Utterly disregarding the distinction between a challenge to the application of a regulation and challenge to the regulation's validity, the court held that a decision on the merits favorable to Coal River would require it to invalidate the regulations, A-22, in which case 30 U.S.C. §1276 would

9

preclude jurisdiction because Coal River did not file a petition within 60 days. A-27.

The district court did agree with Coal River that jurisdiction over its complaint would have been available under one provision of 30 U.S.C. § 1276. Specifically, the court noted that a petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, "or after such date if the petition is based solely on grounds arising after the sixtieth day." A-23. The court, however, found that provision to be available only if Coal River had filed its petition within 60 days of when it began to export coal, and thus it did not permit actions, such as plaintiff's, based solely on "arising after" grounds. A-27.

### III. Cases Brought by Other Producers in CFC, Pursuant to Tucker Act Jurisdiction, Seeking Refunds of Reclamation Fees Imposed on Coal When Sold for Export

In 2001, numerous domestic coal companies that regularly entered into contracts to export coal to foreign customers and accordingly paid the reclamation fees on that coal, brought actions in the United States Court of Federal Claims ("CFC"). Many of those cases were consolidated under *Consolidation Coal Company, et al. v. United States*, No. 01-254C. The CFC granted summary judgment in the coal producers' favor. *Consolidation Coal Co. v. United States*, 64

Fed.Cl. 718 (2005).[4] The Court observed that "[b]oth sides agree that the fee would be constitutional if imposed solely on extraction." *Id*. at 724. Conversely, "given defendant's concession that the sale occurs in the export process, the fee . . . would be unconstitutional . . . if imposed at the time the coal is sold." *Id*.

Turning to the dispositive question of when the tax was assessed, the CFC rejected the Government's assertion that the statute required OSM to impose the fee on coal when first extracted, rather than when later sold. The court recognized that the Government's position was "directly contradicted" by the law of this Circuit, which was based in significant part on the argument, which OSM itself advocated, that the statutory language was ambiguous. *Id*. at 726.

The CFC further explained that OSM's position that the tax accrues upon extraction could not be reconciled with OSM's failure to tax unsold coal. In a prior case, the Government had "acknowledged that it 'does not now claim, and never has claimed, that an operator which mines coal . . . and places that coal in a coal stockpile prior to sale, should pay a reclamation fee . . . on that coal.'" *Id*. at 727 (quoting *United States v. Consolidation Coal Co.*, No. 82-1077, slip op. at 3 (S.D. W.Va. Nov. 7, 1985)). The CFC noted that other courts had expressed the same understanding. *See id.*

---

[4] The Court of Federal Claims initially dismissed the suit for lack of jurisdiction, *Consolidation Coal Co. v. United States,* 54 Fed. Cl. 14, 20 (2002), but the Federal Circuit reversed and remanded, 351 F.3d 1374 (Fed. Cir. 2003).

Accordingly, because OSM imposed the tax "upon the sale of coal," and because that sale occurred while the coal at issue was in the export stream, the CFC held that the tax was unconstitutional. *Id*. at 733.

The Federal Circuit reversed. 528 F.3d 1344 (Fed. Cir. 2008) (*Consol III*). Preliminarily, it accepted that a tax on the sale of coal bound for export would violate the Export Clause. *Id*. at 1347. It also recognized that OSM determined the taxable weight and value of the coal at the time of sale, not extraction. *Id.* The Federal Circuit nonetheless deemed OSM's actual application of the tax irrelevant as a matter of law because, in its view, the statute could be reasonably construed as imposing the tax upon initial extraction. Applying the doctrine of constitutional avoidance, the court construed the statute to tax only "coal extracted." *Id*. at 1347-48.

The Federal Circuit recognized that in this Court's *Drummond* decision, OSM successfully took what Coal River contends is a position inconsistent with "coal extracted" -- that it permissibly had imposed the tax based on a weight that included water, which was not present at sale but not extraction. *See Consol III,* 528 F.3d at 1348 (citing *Drummond*, 796 F.2d at 507). The Federal Circuit, however, concluded that this Court's interpretation would render the tax unconstitutional: if SMCRA "is a tax on extraction *and* sale – then, as it applies to sales that occur in the export process, it is an unconstitutional violation of the

12

Export Clause." *Id.* at 1347.

The Federal Circuit believed that constitutional avoidance required it to override OSM's interpretation of the tax, as well as the actual application of the tax to coal producers. The Federal Circuit deemed *Drummond* irrelevant because this Circuit "did not itself independently determine the meaning of the statutory term 'coal produced,' but instead gave *Chevron* deference to the regulatory definition of that term, which included water as part of the 'coal produced.'" *Id*. at 1348. In the Federal Circuit's view, "the canon of constitutional avoidance mandates that we adopt the reasonable construction that as applied to the SMCRA reclamation fee 'coal produced' is limited to 'coal extracted.'" *Id.*

On remand, the coal producers argued that the Federal Circuit's decision resolved only the prospective construction of SMCRA, and did not preclude the producers' right to reimbursement of taxes that OSM had in fact imposed on the sale of coal in export commerce. The CFC disagreed, holding that the Federal Circuit's decision entirely precluded petitioners' claim under the Export Clause.

The Federal Circuit affirmed. 615 F.3d 1378 (Fed. Cir. 2010) ("*Consol V*"). The court again invoked constitutional avoidance, interpreting OSM's regulations to apply only to the extraction of coal in order to avoid their invalidation under the Export Clause. *Id.* at 1382. (holding that the phrase "'coal produced' . . . applies to 'coal extracted' rather than coal sold.'") The Federal Circuit again disregarded

13

OSM's *actual* practice of imposing the tax upon the sale of exported coal, and re-characterized the tax as a deferred assessment on the extraction of coal.

On October 12, 2010, the producers' petition for rehearing and rehearing *en banc* was denied, and the Supreme Court subsequently denied their petition for writ of certiorari. 131 S. Ct. 2990 (June 13, 2011). On December 8, 2011, the CFC denied producers' motions for continuation of the existing stay, pending resolution of the instant action, and on April 5, 2012 on other proximate dates, various judges of the CFC dismissed the complaints, including those of additional producers not party to *Consolidation Coal*. The additional producers appealed the dismissal of their complaints, which was affirmed by the Federal Circuit. *Aracoma Coal Company v. United States*, 2013 WL 3779895 (July 22, 2013).

## STATEMENT OF FACTS

Coal River, a corporation organized on June 14, 2003 under the laws of the State of West Virginia, is a producer and exporter of coal. A-7. It has sold coal for export during each of the calendar quarters from the second quarter of 2008 through the present. A-7. By application of its regulations, including 30 C.F.R. § 870.12(a)-(b), defendant Department of the Interior through OSM, has imposed a tax on Coal River's coal, at the time it is sold for export, and while it is in the export stream, A-7, 8, in violation of the Export Clause of the United States

14

Constitution, Art. I, § 9, Cl. 5, which provides that "[n]o Tax or Duty shall be laid on Articles exported from any State."

## SUMMARY OF ARGUMENT

The district court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, over Coal River's APA claim challenging OSM's unconstitutional application to exports of the regulations imposing the reclamation fee on coal when sold (Count II of the complaint). Section 526 of the SMCRA (30 U.S.C. § 1276) neither withdraws jurisdiction from §1331 over Coal River's claim, nor imposes on that claim the 60-day filing period for petitions seeking judicial review under §1276. The statutory language evidences no clear expression of Congress' intent to withdraw or limit other grants of jurisdiction, and indeed the language indicates that Congress intended not to do so.

Jurisdiction under §1276 is limited to challenges to agency rulemaking, but Coal River does not challenge the facial validity of the rules. Rather, Coal River's claim challenges OSM's unconstitutional application of otherwise valid regulations to coal at the point of sale. The district court erred when it misconstrued Coal River's claim as having the potential to invalidate the regulations as a whole, which it found necessarily brought Coal River's APA claim within the jurisdiction of §1276. A-23.

The district court's reliance on *Duke Energy,* A-16*,* was misplaced. That case addressed the Clean Air Act ("CAA"), which specifically bars challenges to the enforcement of CAA regulations constituting "a form of judicial review implicating the provisions of § 307(b) of the Act, which limit challenges to the validity of a regulation during enforcement proceedings when such review "could have been obtained" in the Court of Appeals for the District of Columbia Circuit within 60 days of EPA rulemaking." *Envt'l Defense v. Duke Energy Corp.,* 549 U.S. 561, 581 (2007)(citing 42 U.S.C. § 7607(b)). There is no parallel limitation in §1276, which does not even address judicial review of enforcement proceedings or the application of SMCRA regulations by OSM.

The 60-day filing period in §1276 (a)(1) does not extend to APA challenges under the jurisdiction of §1331, as that the filing period applies only to an "action subject to judicial review under this subsection [(a)(1)]…." Coal River's action challenging the application of the regulations is not subject to judicial review under §1276(a)(1), which authorizes review of agency rulemaking.

In regard to Count III of the complaint, Coal River's challenge to the constitutionality of the regulations was timely filed under §1276(a)(1). Although the district court correctly determined that Coal River's claim qualifies under the "arising after" grounds exception provided in §1276(a)(1), A-26, it erred when it held that the 60-day filing period reasserts itself such that Coal River should have

16

filed suit within 60 days of the newly arising grounds. A-27. Congress provided that a petition "shall be filed … within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day." It declined however, to include limiting language that was contemporaneously provided in the Clean Air Act Amendments, which requires "within sixty days after such grounds arise…."  Congress was well aware of language that would impose the limitation the district court applied, but the language in the actual statute shows a conscious decision in §1276(a)(1) not to bar the filing of an "arising after" grounds petition more than 60 days after the new grounds arose.

Nor in any event is the 60-day filing period jurisdictional, because time prescriptions, however emphatic, are not jurisdictional unless Congress has clearly identified them as such. It did not so state in §1276(a)(1). Consequently, the presumption of equitable tolling applies, based on Coal River's non-existence and lack of standing to file a petition in 1978, which defendants contend was the only recourse available under SMCRA. It also further confirms that Congress did not intend the 60-day filing period, applicable to claims brought "under this subsection," to apply to claims, such as Coal River's Count II, brought under the independent jurisdiction of §1331.

17

Finally, in this Circuit, an aggrieved party such as Coal River, challenging the application of a regulation, may challenge the validity of the regulations themselves, even beyond the statutory time limits established for such challenge. This circuit's decision in *National Mining Ass'n v. U.S. Dep't of the Interior*, 70 F.3d 1345, 1350 (D.C. Cir. 1995) is not controlling, as it foreclosed only the judicial review of a petition, filed more than 60 days after promulgation of a regulation, against the agency's denial of a petition to revise or repeal the regulation. Moreover, the panel's decision was premised on the 60-day filing period being jurisdictional, whereas recent Supreme Court decisions have clarified that it can be considered jurisdictional only if Congress so specified. It did not do so in §1276(a)(1).

OSM's imposition of the tax is on processed coal when sold rather than raw coal when extracted, as determined by this Circuit in *Drummond*, and reflected in the actual administrative practice which establishes every nexus between the tax and coal when sold, and none with coal when extracted. This Court should not follow the Federal Circuit in mistakenly adopting the canon of constitutional avoidance to construe the regulatory term "coal produced" as coal extracted, in disregard of OSM's actual practice of imposing the tax based on regulations that unambiguously tax coal when sold.

## STANDARD OF REVIEW

Although the defendants styled their motion as one for judgment on the pleadings, Fed. R. Civ. P. 12(c), the district court dismissed the case for lack of subject matter jurisdiction. In this Circuit, as in others, the court of appeals should "review '*de novo* the district court's grant of a motion to dismiss for lack of subject matter jurisdiction.'" *National Air Traffic Controllers Ass'n v. Federal Service Impasses Panel,* 606 F.3d 780 (D.C. Cir. 2010)(quoting *Piersall v. Winter,* 435 F.3d 319, 321 (D.C.Cir.2006).

In reviewing *de novo,* this Court should accept the veracity of Coal River's factual allegations, and construe its complaint liberally.  *See Am. Nat'l Ins. Co. v. FDIC,* 642 F.3d 1137, 1139 (D.C.Cir. 2011); *Barr v. Clinton,* 370 F.3d 1196, 1199 (D.C. Cir. 2004).

19

**ARGUMENT**

I.   **SMCRA DID NOT WITHDRAW FEDERAL QUESTION JURISDICTION OVER AN APA CHALLENGE TO AGENCY ACTION TAXING EXPORTS**

Pursuant to 28 U.S.C. § 1331, Coal River invoked the federal question jurisdiction of the district court over its challenge, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704, against the unconstitutional application of facially valid regulations taxing coal when sold.[5] A-7. The district court's lone footnote addressing APA jurisdiction did not dispute that Congress, in the APA, had waived sovereign immunity from challenges to agency action, or that §1331 had established independent subject matter jurisdiction over APA claims. A-27-28.

The district court regarded §1276 as a withdrawal of federal question jurisdiction over an APA challenge to the agency's application of its regulations, brought by a party who failed to petition within the filing period for claims brought under §1276 jurisdiction. Observing that "agency actions are not reviewable under [the APA] if other 'statutes preclude judicial review,' " *Patent Office Prof'l Ass'n v. Federal Labor Rels. Auth.,* 128 F.3d 751, 753 (D.C.Cir.1997) (citing 5 U.S.C. § 701(a)(1)), Judge Rothstein concluded that  "[b]ecause § 1276(a)(1) bars review of

---

[5] Count II of the complaint alleges that "Interior's imposition of a tax on coal when sold for export violates the Export Clause…." Count III alleges that "[I]nsofar as Interior's regulations impose a tax on coal when sold, they violate the Export Clause…."

20

Coal River's untimely claim, the APA cannot provide this Court with a source of jurisdiction to review Coal River's complaint." A-28.

But the plain language of §1276(a)(1), and the case law limiting circumstances under which jurisdiction is withdrawn, amply demonstrate that Congress did not "preclude judicial review" of, or impose a 60-day filing deadline on, an APA claim brought under the independent grant of jurisdiction provided under § 1331.

## A.      Withdrawal of Section 1331 Jurisdiction, Particularly Over Constitutional Claims, Requires Clear Expression in Section 1276(a)(1)

"[T]he APA contemplates, in the absence of a clear expression of contrary congressional intent, that judicial review will be available for colorable constitutional claims." *Lincoln v. Vigil*, 508 U.S. 102, 195 (1993). Concerning the defendants' contention that §1276 bars review under APA and federal question jurisdiction, "it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the (constitutional) question(s) may be avoided.' *Johnson v. Robison*, 415 U.S. at 367 (citing *United States v. Thirty-seven Photographs*, 402 U.S. 363, 369 (1971)).

In *Califano v. Sanders*, 430 U.S. 99 (1977), the Supreme Court recognized "the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed, and [that] we will not read a statutory

21

scheme to take the "extraordinary" step of foreclosing jurisdiction unless Congress'
intent to do so is manifested by "'clear and convincing'" evidence." *Id.* at 109
(citing *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975); *Johnson v. Robison*, 415
U.S. 361, 366-67 (1974))."

 The Supreme Court has further observed that to allow the foreclosure of
review of constitutional challenges would be "an extreme position, and one we
would be most reluctant to adopt without 'a showing of 'clear and convincing
evidence,'" to overcome the "strong presumption that Congress did not mean to
prohibit all judicial review" of executive action. *Bowen v. Michigan Academy*, 476
U.S. 667, 680-81 (1986)(internal citations omitted).


 This presumption has been reinforced by the enactment of the APA, "which
embodies the basic presumption of judicial review." *Holmes Limestone Co. v.
Andrus,* 655 F.2d 732, 738 (6th Cir. 1981). In *Holmes*, the Court held that to
deprive plaintiff of its property rights because it became aware of the adoption of
OSM regulation only after the 60-day deadline has passed, "raises serious
constitutional questions." *Id*. Likewise, Coal River should not be subjected to
unconstitutional taxes because it did not exist 26 years after the 60-day deadline
expired.

The Supreme Court has repeatedly held that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 598, 603 (1988). In deference to those concerns, the Court has observed that "federal courts have the power to adopt narrowing constructions of federal legislation." *Boos v. Barry,* 485 U.S. 312, 330-31 (1988). "Indeed, the federal courts have the duty to avoid constitutional difficulties by doing so if such a construction is fairly possible." *Id*. As shown below, a construction of §1276 to avoid withdrawal or limitation of §1331 jurisdiction over Coal River's APA challenge is not only possible, but required.

### B. Section 1276(a)(1) Did Not Withdraw § 1331 Jurisdiction Over Coal River's Challenge to OSM's Unconstitutional Application of A Facially Valid Regulation

1. The Statutory Language Does Not Withdraw Jurisdiction

The plain language of §1276 demonstrates that Congress did not intend to establish it as the *exclusive* basis of jurisdiction for reviewing challenges to the promulgation of national rules, let alone as an exclusive regime for reviewing suits that challenge the unconstitutional *application* of those regulations to coal in the export stream.  Indeed, §1276 provides no judicial review for such as-applied challenges. Nor did Congress in enacting §1276 intend to impose a 60-day filing period for claims brought under other grants of jurisdiction:

> Any action by the Secretary *promulgating national rules or regulations*…shall be subject to judicial review in the United

23

> States District Court for the [D.C.] Circuit…. *Any other action constituting rulemaking* by the Secretary shall be subject to judicial review only by the district court for the District in which the surface coal mining operation is located. A petition for review of any action subject to judicial review *under this subsection* shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day.

30 U.S.C. § 1276(a)(1) (emphasis added).

Congress thus provided, through §1276, jurisdiction over an action "promulgating rules or regulations," and "any other action constituting rulemaking," and made no provision for review of any other agency action, such as the application or enforcement of those rules or regulations. Challenges to non-rulemaking agency action may be made by an APA claim, asserted under federal question jurisdiction provided by §1331. *Chrysler Corp. v. Brown,* 441 U.S. 281, 317 n. 47(1979); *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009). It is illogical to impute to §1276, which on its face establishes *no* judicial review for non-rulemaking agency action, the intent to withdraw jurisdiction established under another statute, §1331, that *does* allow application challenges**.**

Consistent with the goal of maintaining jurisdiction over non-rulemaking agency action under other statutes, Congress included in §1276 the phrase "under this subsection." The plain import of that limitation is that Congress contemplated that jurisdiction under other statutes, such as that provided under the Tucker Act or

24

§1331, would be complementary to §1276 jurisdiction over the promulgation of rules and regulations, or other rulemaking.

Accordingly, the 60-day filing period of §1276(a)(1) does not withdraw or limit jurisdiction over an APA action challenging the application of the tax to coal in the export stream. Under recent Supreme Court jurisprudence, discussed at Section II., B., *infra,* any statutory withdrawal of jurisdiction requires language that explicitly refers to jurisdiction. The 60-day filing period does not. *A fortiori*, it does not even suggest that the 60-day filing period is a jurisdictional limitation imposed on a challenge, (a) pursuant to jurisdiction provided under another statute, or (b) to the application of facially valid regulations, on the premise that the validity of the regulations has been called into question because they are overbroad.

> 2. The Case Law Interpreting The SMCRA Has Held That The Act Was Not Intended to Withdraw Other Jurisdictional Grants Consistent With §1276

The distinction between seeking review under §1276 and seeking review under other jurisdictional grants, though ignored by the district court, has been regarded by other courts as significant.

The government previously attempted unsuccessfully, in *Consolidation Coal Co. v. United States*, 351 F.3d 1374 (Fed. Cir. 2003), to characterize a coal producer's Export Clause challenge to the application of these regulations

25

imposing the tax on exports as a challenge to the validity of the regulation itself,

and thus barred under § 1276. The Federal Circuit refused to find that SMCRA

withdrew Tucker Act jurisdiction over the producer's claims. In rejecting the

government's contention, the court distinguished *Amerikohl Mining, Inc. v. United

States*, 899 F.2d 1210 (Fed. Cir. 1990), which held that a producer's challenge to

an alleged overpayment of the reclamation fee fell within the plain meaning of

§1276(a)(1). *Id*. at 1213.

In language applicable to the present case, *Consolidation Coal* distinguished

*Amerikohl* because there:

> plaintiffs sought a refund from the government for reclamation
> fees paid under the same regulation at issue in this case, because it
> does not provide for a deduction of materials such as excess
> moisture, debris, and clay. *The claim was based on the SMCRA
> itself,* with the allegation that a regulation that did not account for
> the excess material "exceeded the Secretary's statutory authority."
> In trying to circumvent the SMCRA's jurisdictional limitations,
> plaintiffs argued on appeal that under § 1276(a)(1), the D.C.
> District Court has exclusive jurisdiction over the review of pre-
> enforcement proceedings upon a timely petition by any person who
> participated in the administrative rulemaking process, but that
> other courts may consider the validity of SMCRA regulations in
> enforcement proceedings initiated by aggrieved parties who did not
> participate in the administrative proceedings. Recognizing that
> Congress wished to create with the SMCRA a uniform system of
> national standards, this court rejected plaintiffs' arguments and
> properly held that Congress intended the D.C. District Court to be
> the exclusive forum for challenging the promulgation of national
> rules and regulations under the SMCRA. *Importantly, the cause of
> action asserted in Amerikohl was not based on the Constitution or
> any federal law other than the SMCRA itself. In marked contrast,
> however, the coal producers' challenge in this case is based on the*

> *Export Clause, which provides an independent self-executing cause of action.*

351 F.3d at1379-80 (citations omitted)(emphasis added). Likewise, Coal River's challenge in the instant case is based upon the Export Clause of the Constitution, rather than on the rulemaking authority of SMCRA.[6]

Having distinguished Consolidation Coal's action as one that indeed challenged the unconstitutional application of the tax, rather than the validity of the regulation under SMCRA, the Federal Circuit turned to jurisdiction:

> We do not agree with the government that § 1276(a)(1) provides for exclusive jurisdiction over all challenges to the reclamation fee regulation, *including constitutional challenges*. As the coal producers point out, there is no statement from Congress in § 1276(a)(1), or any other statute, indicating that it has unambiguously withdrawn Tucker Act jurisdiction over such challenges…. Thus, unlike the relevant jurisdictional statute in *United States Shoe,* § 1276(a)(1) makes no mention of the Tucker Act *or suits against the government that "arise[ ] out of any law of the United States."* Moreover, our holding in *Amerikohl* that § 1276(a)(1) "creates the right of judicial review of regulations promulgated under the SMCRA," is not commensurate with a determination that § 1276(1)(1) constitutes an unambiguous withdrawal of Tucker Act jurisdiction in the Court of Federal Claims. 899 F.2d at 1215;

---

[6] *Tug Valley v. Watt,* 703 F.2d 796, 799 (4th Cir.1983), which was relied upon by the district court, is similarly distinguishable as being based on a claim under SMCRA itself: "[Plaintiff] contends the Secretary acted in violation of section 503 of SMCRA and 30 C.F.R. § 705.5 by approving a state plan . . . contrary to the mandate of section 517(g) of SMCRA." Although Tug Valley also asserted some constitutional challenges, the court determined that they failed to state a cause of action. *Id.* at 802.

27

*Id*. at 1380-81 (citations omitted)(emphasis added).

Just as *Consolidation Coal* found that there is no language in §1276(a)(1) that constitutes an unambiguous withdrawal of Tucker Act jurisdiction, here there is no statutory language (i) withdrawing federal question jurisdiction granted in §1331 over an APA challenge, such as that of Coal River, to the application of the tax to export sales, or (ii) justifying the re-characterization of its challenge to the unconstitutional application of the regulation as a challenge to the validity of the regulation itself, such that it might be time barred. If §1276(a)(1) does not bar a Tucker Act suit in the Court of Federal Claims challenging the application of the tax under the Export Clause, it also should not bar a similar challenge, under the APA, brought in the very same court that is specified in §1276 for petitions filed under subsection (a)(1).

Likewise, in *Ohio River Valley v. Kempthorne*, 473 F.3d 94 (4th Cir. 2006), the Fourth Circuit determined that Congress did not intend to preclude judicial review of challenges under the APA to agency action in enacting the SMCRA:

> To be sure, § 704's broad coverage does contain an exception for actions over which statutes expressly preclude judicial review. This exception is narrow, however, and "[c]ourts will decline to review agency actions only upon a showing that Congress clearly intended to restrict access to judicial review." SMCRA evidences no such intent. To the contrary, Congress explicitly disclaimed any intent to supercede or preempt statutes with potentially overlapping provisions.

28

*Id.* at 100-101 (citations omitted)(quoting *Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir.1996).

The foregoing indicates that the respective grants of jurisdiction under §1331 and §1276 can be maintained in harmony. As the two are "are 'capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to reward each as effective.'" *Blanchette v. Connecticut General Ins. Corporations*, 419 U.S. 102, 133-34 (1974) (citing *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). Moreover, as SMCRA is the later of the two statutes, *Blanchette's* further instruction is relevant:

> A new statute will not be read as wholly or even partially amending a prior one unless there exists a 'positive repugnancy' between the provisions of the new and those of the old that cannot be reconciled. . . . Presumably Congress had given serious thought to the earlier statute, here the broadly based jurisdiction of the Court of Claims. Before holding that the result of the earlier consideration has been repealed or qualified, it is reasonable for a court to insist on the legislature's using language showing that it has made a considered determination to that end. . . .'

419 U.S. at 134 (internal quotation marks and citations omitted).

> 3.  Imposition of the Tax May Be Held Unconstitutional Without Invalidation of the Regulations, Which In Any Event Can Not Operate to Withdraw § 1331 Jurisdiction Over an APA Challenge to Non-Rulemaking Action

Coal River's Count II is directed at OSM's action imposing the reclamation fee on exported coal, which can be found to violate the Export Clause without requiring the invalidation of the regulations  -- "[t]he fact that [the regulations]

29

might operate unconstitutionally under some conceivable set of circumstances is insufficient to render [them] wholly invalid." *Rust v. Sullivan,* 500 U.S. 173, 183 (1991) (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)).

OSM's regulations may be applied to tax domestically sold coal without violating the Constitution. Even if the regulations were considered facially invalid, because they lack an explicit exemption for sales in the export stream, OSM's narrowing construction of the regulations could save them from invalidation by the district court. As the Ninth Circuit has observed, "[w]hen an administrative agency offers a narrowing construction to a facially overbroad regulation, the narrowing construction can render constitutional an otherwise unconstitutional regulation because the construction can constrain the ability of officials to enforce the regulation in an illegitimate manner." *United States v. Linick*, 195 F.3d 538, 542 (9th Cir. 1999)(citing *Ward v. Rock Against Racism*, 491 U.S.781 ,795 (1989).

The district court, however, did the opposite. It erroneously presumed that Coal River's challenge implicated the facial validity of the regulations, and that the possibility of invalidation relieved the court of jurisdiction, presumably including federal question jurisdiction under §1331. A-18-23. ("Once the validity of the regulation is in question, the jurisdictional strictures of §1276(a)(1) must apply…. Accordingly, §1276(a)(1) applies to Plaintiff's claims."). A-23.

30

The court accepted the government's contention that the validity of the regulations came into question, not because it was unconstitutional to tax coal when sold, but because the regulations lacked an explicit exemption for those sales occurring in the export stream. But an explicit exemption is not a prerequisite to OSM's application of the tax in a manner that avoids violation of the Constitution. *Linnick*, at 542. The agency's application of the tax on coal when sold—in the export stream-- is the subject of Count II. Clearly, it can succeed without the district court having to invalidate the regulations, which are benign as a tax on coal when sold.

Even assuming, *arguendo*, that the lack of an explicit exemption for coal sold in the export stream implicated the validity of the regulations, nothing in §1276, which grants judicial review only of rulemaking, indicates that Congress intended to withdraw jurisdiction over APA claims regarding non-rulemaking activity such as the imposition of the reclamation fee on exported coal. To hold otherwise would require a finding that §1331 jurisdiction was withdrawn by implication, which the Court has repeatedly "disfavored." *Blanchette*, 419 U.S. at 133.

Particularly given that the APA mandates the availability of judicial review "absent a clearly expressed congressional intention to the contrary," *Lincoln v. Vigil*, at 195, the district court should not have dismissed as "unimportant" the fact

31

that Coal River challenged the regulations only as applied. The court merely assumed that Coal River's action called into question the validity of the regulations, thus adopting the government's argument that Coal River's ultimate complaint is that the regulations lack explicit language calling for a tax exemption on export sales.  But the court failed to consider the absence of case authority for the government's proposition that the facial validity of otherwise benign regulations (taxing coal when sold) can be deemed implicated, because the regulations lack language precluding *application* in a manner that violates the Constitution.

The district court, relying on the Court's decision in *Duke Energy*, ignored the significance of the difference between a challenge to the application of the regulations and a challenge to their validity. *See Envt'l Defense v. Duke Energy Corp.,* 549 U.S. 561.

*Duke Energy*, however, construed Section 307(b) of the Clean Air Act ("CAA"), which *unlike* §1276(a)(1), specifically barred challenges to the enforcement of CAA regulations that involved challenges to the validity of the regulations themselves: "Action of the Administrator with respect to which review *could have been obtained* under paragraph (1) [which authorized challenges to various agency action] shall not be subject to judicial review in civil or criminal proceedings for enforcement." 42 U.S.C. § 7607(b)(2)(emphasis added).); *see*

32

*Duke Energy*, 549 U.S. at 581. There is no parallel provision in SMCRA that

precludes challenges to the application of the regulations on the premise that the

challenge is deemed to implicate the validity of the regulations.

     *Duke Energy* is further distinguishable because, pursuant to §7607(b)(2), it

limited challenges to the validity of regulations based on their *affirmative*

definition of the term "modification." Particularly absent "clear expression" to the

contrary in §1276, the case does not support the limitation of a petitioner's

challenge to the application of regulations that are facially valid, on the premise

that the regulations are implicitly vulnerable to invalidation because they *lack*

language instructing the agency to exempt those sales that are constitutionally

exempt.

     Had Congress intended that §1276 be the sole jurisdictional path to

challenge the application of a regulation, it surely would have included within its

scope a provision for judicial review of actions of the Secretary that go beyond the

*promulgation* of the regulations. Congress had at its disposal language that it

included in the judicial review provision of the Clean Air Act, which, in contrast to

§1276, establishes jurisdiction for rules on their face and also the applications of

those rules in individual cases:

> **(1)** A petition for review of action of the Administrator in
> promulgating any national primary or secondary ambient air quality
> standard, … or final *action* taken, by the Administrator under this
> chapter may be filed only in the [U.S.] Court of Appeals for the

33

District of Columbia. A petition for review of the Administrator's
action in approving or promulgating any implementation plan . . .or
any other final *action* of the Administrator under this chapter . . .
which is locally or regionally applicable may be filed only in the
United States Court of Appeals for the appropriate circuit.

42 U.S.C. § 7607(b)(1) (emphasis added).

Congress's decision not to adopt the CAA's language in §1276,

notwithstanding how close in time the two statutes were adopted, counsels against

the statutory interpretation of the district court. Clearly, Congress did not intend

§1276 withdraw the subject matter jurisdiction granted by §1331 over APA

challenges.

The district court relied on *National Mining,* 70 F.3d at 1350, for the

proposition that Congress intended §1276(a)(1) to be a jurisdictional bar to

challenges to agency action that call into question the validity of OSM's

rulemaking, which in turn could have been challenged within the 60-day period. A-

24. However, *National Mining* is distinguishable. Although it addressed the time

limits on seeking judicial review under §1276(a)(1) itself, it did not address

whether that section withdrew jurisdiction over challenges brought after the 60-day

period expired pursuant to jurisdiction granted under other federal statutes, such as

§ 1331.

## II.    Coal River's Claim Under §1276 Jurisdiction Was Timely

### A. The "Arising After" Grounds Claim Was Timely

#### 1.    The Plain Language of §1276 Precludes Reassertion of a 60-Day Filing Period for "Arising After" Claims

The district court correctly held that Coal River's claim qualifies under that subsection's "arising after" exception. A-26. Coal River did not exist until 2003, thus it lacked standing during the respective 60-day periods immediately following the promulgation of the regulations in 1978, and the agency's amendment of those regulations in 1982. Nor did it export coal or pay the tax on exports until 2008, when it could first demonstrate an "injury in fact" traceable to the alleged constitutional infirmity of 30 C.F.R. § 870.12.

The district court erred, however, when it held Coal River's claim untimely. A-27. The language of §1276(a)(1) imposes no time limit, whether 60 days or otherwise, on the filing of a petition based on an "arising after" claim. *See id.* ("A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, *or after such date* if the petition is based solely on grounds arising after the sixtieth day.") (emphasis added).  The phrase "after such date" imposes no time limit. Indeed the simple prescription of this language is that a time limit is precluded.

35

Confirmation of Congressional intent to preclude a time limit is found in amendments to the CAA[7] that Congress enacted during a period of months concurrent with its writing of SMCRA.[8] In the CAA amendments, Congress considered an "arising after" provision very similar to that of §1276(a)(1), and in the process, demonstrated its ability to write language that *would* result in the reassertion of a 60-day time limit, *if* that were Congress' intent.

Thus, in contrast to §1276(a)(1), section 307 (b)(1) of the Clean Air Act provides:

> Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation ... or action appears in the Federal Register, *except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise.*

---

[7] The Clean Air Act Amendments of 1977, P.L. 95-95 (August 7, 1977).

[8] SMCRA, P.L.95-87 (August 3, 1977).

36

42 U.S.C. § 7607(b)(1)(emphasis added).[9]

Congress' insertion in the CAA of the requirement that an "arising-after" grounds petition be filed "within sixty days after such grounds arise," contemporaneously with its adoption in SMCRA of the open-ended "or after such date" language, leaves no doubt that Congress intended that no time limit bar the filing of an arising-after grounds petition under SMCRA.

This Circuit agrees. In *American Road & Transp. Builders Ass'n v. E.P.A.*, 588 F.3d 1109 (D.C. Cir. 2009), the Court compared §1276, with the relevant provision in the CAA for petitions filed based on arising-after grounds:

> We cannot make out any material distinction--at any rate any distinction helpful to petitioner--between the statutory language at issue in *National Mining Association* and the statutory language at issue here. Section § 307(b)(1) in fact imposes *one additional constraint* on petitions brought outside the original 60-day window based on after-arising grounds: they must be filed within 60 days of the new event, *rather than any time after it*.

*Id*. at 1113(emphasis added).

---

[9] Section 305(c)(3) of the Clean Air Act Amendments of 1977 provided:

> The last sentence of section 307(b)(1) of such Act is amended to read as follows: "Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation ... or action appears in the Federal Register, except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise."

P.L. 95-95 (August 7, 1977).

By "one additional constraint," the panel observed that §1276 did not require the petition to be filed within 60 days of the new event. By "rather than any time after it," the panel further observed that a petition under §1276 may indeed be filed at any time after the new grounds arise. The district court failed to explain why this Court's previous analysis of the statutory language should not be controlling.

2.   The District Court Substituted Its Own Judgment for that
        Expressed by Congress in the Plain Language of the Statute

Citing only to its previous decision in *Nat'l Mining Ass'n v. Office of Hearings & Appeals,* 777 F. Supp. 2d 164, 173 (D.D.C. 2011), the district court held that the initial 60-day statute of limitations provided in §1276(a)(1) reasserts itself to apply to any action filed pursuant to the "arising after" exception. A-27. Yet *Nat'l Mining* is at best of limited authority, for in it the court only "assume[d]" that the limitations period should reassert itself "[i]n the absence of any guidance to the contrary…" *Id.*

Disregarding Congress' selection of the words "or after such date," rather than the Clean Air Act's "shall be filed within sixty days after such grounds arise," the district court chose to substitute its *assumption* of Congress's intent for the unambiguous prescription of the statute:

> [I]t makes little sense to restrict the initial challenges to the regulations to 60 days while allowing petitions based on later arising grounds to be filed within six years of the ripening of their claims.

38

> Requiring a petitioner to make a challenge within 60 days of the later arising event is in line with Congress's intent to strike a "careful balance between the need for administrative finality and the need to provide for subsequent review in the event of unexpected difficulties." *National Mining Ass'n v. Dep't of Interior,* 70 F.3d at 1350.

A-27.

Whatever the policy merits for or against the rule Congress wrote, that decision unquestionably belongs to the legislative, rather than the judicial branch. The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992) (internal citations omitted).

Moreover, the two policy reasons offered by the district court are not even themselves presumptively valid. A-27. To Congress, it may indeed have made more than a "little sense" to restrict to 60-days those petitions based on original grounds, and to impose no similar limitation on petitions based solely on after-arising grounds. Congress may have required the filing of an original grounds petition within 60 days of rule-making because (1) the rule would have been the subject of recent OSM analysis and administrative focus, as well as the focus of the coal industry whose members probably participated in the notice and comment proceedings, and thus it would not be unreasonable to require petitioners to act

39

within a short, 60-day period, and (2) some merit was seen in requiring OSM and the industry to be alerted promptly before they invested too much time and expense in the establishment of mechanisms for administering the regulations and complying with them.

In contrast, Congress may have expected that there would be *less* urgency to consider grounds arising solely after the 60th day, because in order to arise solely after the 60th day, those grounds would be more likely to be unique to the particular petitioner, and the issue's resolution would be less likely to be of nationwide significance. Moreover, it would have been less reasonable to impose the short filing deadline in the absence of recent OSM analysis or administrative focus, associated with the original rulemaking, or recent notice and comment proceedings which would have been the focus of the coal industry's attention.

Unlike in the case of original rulemaking, there is also no risk that a petition filed after 60-days would delay OSM's implementation of a nationwide administrative and enforcement program, as it would already have been in place. Nor would it make a difference if an arising-after grounds petition, which resulted in the modification or scrapping of an administration or enforcement program, were filed 60-days or 600 days after those grounds arose, as the cost to the agency of compliance with an adverse judicial resolution would be expected to be the same. That contrasts with the waste of resources that might be occasioned by a

40

petition based on original grounds which, had it been filed within the 60-day period, might have alerted OSM to consider postponing an otherwise immediate investment in the implementation of its program, for fear that the original rulemaking might soon be invalidated or modified by the court.

Finally, the district court misread this Circuit's law when it held that "[r]equiring a petitioner to make a challenge within 60 days of the later arising event is in line with Congress's intent to strike a 'careful balance between the need for administrative finality and the need to provide for subsequent review in the event of unexpected difficulties.'" A-27 (quoting *National Mining,* 70 F.3d at 1350). In *National Mining*, the panel referred to the "careful balance" only to explain why Congress inserted a 60-day filing period in §1276(a)(1), relevant to original grounds petitions, and why it construed that to mean that a petitioner under that section should not be permitted to file beyond the 60-day period following the issuance of the regulations when the grounds existed during that initial period. The panel did not address the timing of a petition based solely *on grounds arising after* that 60-day period. When it came to arising-after grounds, Congress' intent to strike a careful balance manifested itself in its decision *not* to adopt, in §1276(a)(1), the language of the CAA imposing a new 60-day filing period.

### B.     The 60-day Filing Period is Not Jurisdictional

Particularly in light of recent Supreme Court precedent narrowing the scope of what may be properly considered a "jurisdictional" limitation, the 60-day filing period in §1276 should not be considered jurisdictional. This is important for two reasons. First, even if the language of §1276 is deemed sufficiently explicit to render the 60-day period jurisdictional for actions authorized by §1276, despite recent case law precluding such characterization, it certainly is not sufficiently explicit to limit challenges for which *other* statutes provide jurisdiction, such as the Tucker Act or §1331. Second, it means that the doctrine of equitable tolling may operate to allow Coal River, which did not exist during the period 60 days following the promulgation of the regulations, to challenge the application of the regulations after such period.

### 1. Section 1276's Filing Period Not "Typed Jurisdictional"

Over the past fifteen years, the definition of what constitutes a jurisdictional provision has been clarified and narrowed. In *National Mining*, this Circuit held that the 60-day filing period in §1276 constituted a "congressional bar," unlike the filing periods in other statutes, considered in previous cases, in which "Congress did not specifically address the consequences of failure to bring a challenge within the statutory period." 70 F.3d at 1350. Notably, the panel did not identify, nor is it discernible, what "consequences" are specifically addressed in §1276. That said,

42

this Court's subsequent decision *American Road,* 588 F.3d 1109, characterized

*National Mining* as holding that the SMCRA "amounted to an explicit decision to

preclude review of repeal or revision-seeking petitions filed outside the statutory

deadlines." *Id*. at 1113.

　　　Subsequent to *National Mining*, the Supreme Court explained that

provisions such as the 60-day filing period in §1276, which are generally written

without explicit reference to jurisdiction, are not jurisdictional.

> A rule is jurisdictional "[i]f the Legislature clearly states that a
> threshold limitation on a statute's scope shall count as jurisdictional."
> But if "Congress does not rank a statutory limitation on coverage as
> jurisdictional, courts should treat the restriction as nonjurisdictional."
>
> This Court, moreover, has long "rejected the notion that 'all
> mandatory prescriptions, however emphatic, are ... properly typed
> jurisdictional.' " Nothing in § 2253(c)(3)'s prescription establishes
> that an omitted indication should remain an open issue throughout the
> case.

*Gonzalez v. Thaler*, 132 S.Ct. 641, 648 & 651 (2012)(internal citations

omitted).

　　　In view of this recent Supreme Court precedent, the 60-day filing

period set forth in §1276, even if characterized as a mandatory time

prescription, is not jurisdictional. Had Congress intended the filing period in

§1276 to be jurisdictional, it would have said so explicitly. See *Arbaugh v*

*Y&H Corp.,* 546 U.S. 500, 502 (2006)(holding that the 15-employee

threshold appears in a separate provision that "*does not speak in*

*jurisdictional terms or refer in any way to the jurisdiction of the district courts*." (citations omitted) (emphasis added)).

Nor does the designation in §1276 of the United States District Court for the District of Columbia as the forum for seeking judicial review under subsection (a)(1) somehow render "jurisdictional" the remaining provisions of the subsection because of their proximate placement, as explained in *Gonzalez*:

> [T]he United States argues that the placement of § 2253(c)(3) in a section containing jurisdictional provisions signals that it too is jurisdictional. In characterizing certain requirements as nonjurisdictional, we have on occasion observed their "'separat[ion]'" from jurisdictional provisions. The converse, however, is not necessarily true: Mere proximity will not turn a rule that speaks in nonjurisdictional terms into a jurisdictional hurdle. In fact, § 2253(c)(3)'s proximity to §§ 2253(a), (b), and (c)(1) highlights the absence of clear jurisdictional terms in § 2253(c)(3).

*Gonzalez*, at 651 (citations omitted).

In view of the foregoing, and in particular the recently expressed view of the Supreme Court in *Arbaugh*, that *unless Congress "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional . . . courts should treat the restriction as nonjurisdictional in* character," *id*. at 514, the language in *National Mining* to the contrary cannot be considered binding.

Given that the 60-day filing period is not jurisdictional in regards to judicial review sought under §1276 itself, *a fortiori* it cannot operate to limit Coal River's challenge, which was brought under *other* bases of jurisdiction to which §1276 does not even refer, and which *National Mining* did not address.

### 2. Presumption of Equitable Tolling

In the alternative, the non-jurisdictional nature of the 60-day filing period also entitles Coal River to maintain its challenge under the doctrine of equitable tolling based on its non-existence during the 60-days period following the promulgation of the 1978 or 1982 regulations. As the Supreme Court has held: "The same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990).

Following *Irwin*, this circuit has reassessed the criteria for determining whether a limitations period is jurisdictional, and whether equitable tolling is available. In *Harris v F.A.A.,* 353 F.3d 1006 (D.C. Cir. 2004), the panel observed that statutes of limitations cannot be presumed to be jurisdictional in light of plain

Supreme Court precedent. *Id.* at 1013 &n.7 (citing, *e.g., Irwin v Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990).[10]

Other courts have also recognized that *Irwin* stands for the proposition that "federal statutory time limitations on suits against the government are not jurisdictional in nature." *See, e.g.*, *Washington v. Garrett*, 10 F.3d 1421, 1437 (9th Cir. 1993). "Earlier statements that statutes of limitations are jurisdictional in nature "have no continuing validity after [Irwin]." *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765 (9th Cir. 1997). The court elaborated that:

> *where the language of a statute of limitations does not speak of jurisdiction*, but erects only a procedural bar, the Supreme Court has stated that recognition of traditional exceptions such as equitable tolling, waiver, and estoppel does little to broaden the congressional waiver of sovereign immunity, and "is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation."

*Id.* at 770 (quoting *Irwin*, 498 U.S. at 95)(emphasis added) (citations omitted).

---

[10] The district court dismissed *Irwin* as being supportive of the rebuttable presumption of equitable tolling: "[T]he Supreme Court has since clarified that *Irwin* does not, as a general matter, overrule prior cases in which the courts have declared a specific statute to be jurisdictional. *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130 (2008) (rejecting the argument that *Irwin* changed the long-standing interpretation by the courts that the court of claims limitations statute is jurisdictional." However, *Sand & Gravel* addressed § 2401, whose "jurisdictional" nature, presumably attributable to its *shall be barred* language, is not seriously questioned under the Supreme Court's recently clarified and narrowed criteria for determining what is "jurisdictional," whereas that criteria should certainly disqualify the filing period language in § 1276 as "jurisdictional," and operate to overrule *National Mining* insofar as its holding conflicts.

Notwithstanding this authority, the district court held that "the 60-day limitation is not subject to equitable tolling due to the jurisdictional nature of §1276." *John R. Sand & Gravel Co. v. United States,* 552 U.S. at 133 (explaining that courts applying a jurisdictional statute of limitations are "forbid[den] ... to consider whether certain equitable considerations warrant extending a limitations period")." A-23. Yet that case considered a statute, 28 U.S.C. § 2401, whose wording differed materially from that of §1276, and supported the determination that §2401 was indeed jurisdictional: "[E]very civil action commenced against the United States *shall be barred* unless the complaint is filed within six years after the right of action first accrues." No such consequence or jurisdictional limit is even suggested in the language of §1276.

In view of the Supreme Court and other precedent cited above, the filing period of §1276 should not be considered to be jurisdictional, neither in respect to withdrawing jurisdiction granted under §1331 for Coal River's APA challenge, nor insofar as it might otherwise preclude equitable tolling of its action under the jurisdiction of §1276 itself. To the extent that *National Mining* is inconsistent with that result, it should be overruled given the holdings in *Irwin*, *Gonzalez*, and *Arbaugh*.

47

3.  The 60-day Filing Period Does Not Limit a Challenge to the
Application of the Regulation, Even If Its Success Requires the
Invalidation of the Regulation

In this Circuit, an aggrieved party such as Coal River, challenging the

application of a regulation, may challenge the validity of the regulations

themselves, even beyond the statutory time limits established for such challenge.

As reported in *Independent Community Bankers of America v. Board of*

*Governors*, the D.C. Circuit has

> frequently said that *a party against whom a rule is applied may, at*
> *the time of application, pursue substantive objections to the rule,*
> *including claims that an agency lacked the statutory authority to*
> *adopt the rule, even where the petitioner had notice and*
> *opportunity to bring a direct challenge within statutory time limits.*
> Although the discussions of the application exception in several of
> these cases were dicta, *Graceba* clearly applied the exception.

195 F.3d 28 (D.C.Cir. 1999) (emphasis added)(citations omitted)[11]. Insofar as Coal

River's challenge to the application of the regulations may be deemed to implicate

---

[11] By contrast, observed the court in *Independent Community Bankers*, 195 F.3d at
34:

> we have said that procedural attacks on a rule's adoption are barred
> even when it is applied. See *JEM Broadcasting Co. v. FCC,* 22
> F.3d 320, 325 (D.C.Cir.1994) ("[C]hallenges to the procedural
> lineage of agency regulations, whether raised by direct appeal, by
> petition for amendment or rescission of the regulation or as a
> defense to an agency enforcement proceeding, will not be
> entertained outside the 60-day period provided by statute.");
> *NRDC v. NRC,* 666 F.2d 595, 602-03 (D.C.Cir.1981) (dismissing
> petition alleging procedural defects as untimely); see also *Public*
> *Citizen,* 901 F.2d at 152 ("[A] statutory review period permanently

48

the validity of the regulations, that challenge is substantive rather than procedural, and thus is timely under *Independent Community Bankers*.

In *National Mining*, 70 F.3d 1345, this Court considered cases such as *Functional Music* and *NLRB* in deciding whether challenges to SMCRA regulations may be brought as petitions for a new rule and thereafter as petitions for review of an agency denial. The panel regarded those cases, however, as ones where Congress did not specifically address the consequences of failure to bring a challenge within the statutory period, whereas the panel deemed Congress to have done so in §1276. The panel also rejected the argument that "the congressional bar" extends only to direct attacks on a rule after the 60-day period, not to the procedural device utilized in *Functional Music* and its progeny, *viz.* petitioning for a new rulemaking and seeking review of its denial." *Id.* at 1350-51.

*National Mining*, however, must be distinguished because it addressed only the petitioning for a new rule, and the petitioning for judicial review of the agency's denial.  It never addressed challenges to the agency's application of a rule:

> As applied to rules and regulations, the statutory time limit restricting judicial review of [agency] action is applicable only to cut off review directly from the order promulgating a rule. It does not foreclose

---

limits the time within which a petitioner may claim that an agency action was procedurally defective.")."

195 F.3d at 34.

subsequent examination of a rule where properly brought before this court for review of further [agency] action applying it.

*NLRB Union*, at 195-96 (quoting *Functional Music*, at 546).[12]

As this Circuit observed in *American Road*, 588 F.3d 1109, "*National Mining* did not, so far as we can discern, suggest that such language implied any sort of limitation on the recognized ability of a party against whom a regulation is enforced to contest its validity in the enforcement context. *See, e.g.*, *NLRB Union,* 834 F.2d at 195-96." *Id.* at 1113.

Indeed, one year earlier, this circuit reaffirmed and extended the rule that reflects the fundamental difference between a facial challenge and a challenge to the application of a regulation:

> Nonetheless, our conclusion that P & V's facial challenge to the 1986 rule is untimely does not immunize the rule from all challenge: "*If the Corps applies the rule t*o *P & V's property*, or denies its petition to amend or rescind the rule, *then P & V would be able to challenge the rule notwithstanding that the limitations period has run. See Cellular Telecomms. & Internet Ass'n v. FCC,* 330 F.3d 502, 508 (D.C.Cir.2003); *NLRB Union v. Fed. Labor Relations Auth.,* 834 F.2d 191, 195-96 (D.C.Cir.1987).

*P & V Enters. v. United States Army Corps of Eng'rs,* 516 F.3d 1021, 1026

(D.C.Cir.2008)(emphasis added)(citations omitted).

---

[12] Although at one point, *NLRB Union* referred to the "application" route in the context of a claim by petitioner alleging that the rule is ultra vires, *Functional Music* appears not to limit such claims to those making such allegation. In any event, Coal River's challenge, based on grounds that the regulations and OSM's enforcement of them violates the Constitution, should qualify to a degree even greater than ultra vires grounds.

Most recently, in *NetCoalition v. S.E.C.*, 715 F.3d 342 (D.C. Cir. 2013), this Circuit reminded that that" [c]onsistent with the presumption of judicial review of agency action, we have long allowed the availability of other avenues of review to affect our assessment of our jurisdiction. . . . *NLRB Union v. FLRA,* 834 F.2d 191, 197 (D.C.Cir.1987) (permitting judicial review as "the only remaining path to judicial consideration of the substantive validity" of agency regulations)." *Id.* at 352.

This demonstrates that the *Functional Music* line of cases, including *NLRB Union*, still applies to permit a petitioner to file beyond the 60-day period in §1276: "An agency's regulations may be attacked in two ways once the statutory limitations period has expired. First, a party who possesses standing may challenge regulations directly on the ground that the issuing agency acted in excess of its statutory authority in promulgating them. A challenge of this sort might be raised, for example, by way of defense in an enforcement proceeding." *NLRB Union*, at 195. Moreover, given the rule of this Circuit, *P&V*, at 1026, permitting this challenge after the expiration of a filing deadline under a statute such as §2401, which contains more stringent language (*shall be barred*) than found in §1276, there should be no doubt that *Coal River's* "application" challenge may be maintained under the same authority.

51

And as discussed in Section I.B.2., *supra*, *National Mining* should also be distinguished because it dealt with a petition involving a claim under the substantive law of SMCRA (rather than under the Constitution) and that claim was filed under the jurisdiction of §1276 itself, rather than under a separate grant of jurisdiction. *Consolidation Coal Co. v. U.S.*, 351 F.3d 1374, 1380-81 (Fed. Cir. 2003).

If it cannot be sufficiently distinguished, however, *National Mining* should be overruled, for its apparent definition of the 60-day filing period as jurisdictional, has since been rejected by the Supreme Court. As the panel used the "congressional bar" as the premise for refusing to allow a post-filing period challenge, the removal of that premise should enable Coal River to avail itself of the opportunity under the *Functional Music* line of cases to challenge the application of the regulations in violation of the Export Clause.

## III.   This Panel Should Rule That OSM Imposes the Tax On Coal When Sold In Violation of the Export Clause

Because the essence of Coal River's claim on the merits is controlled by existing circuit precedent, the Court should not only find jurisdiction but also hold that OSM imposes the reclamation fee on coal when sold. *Drummond,* 796 F.2d 503, *aff'g Drummond Coal Co. v. Hodel*, 610 F. Supp. 1489, 1497. Further, because Coal River's sale of coal occurs after it has entered the export stream, the tax violates the Export Clause, and plaintiff asks the Court to so rule.

The Export Clause states: "No Tax or Duty shall be laid on Articles exported from any State." U.S. Const. Art. I, § 9, cl. 5. Twice in recent years, the Supreme Court has broadly and unequivocally emphasized the absolute nature of this prohibition. *See United States v. U.S. Shoe Corp.*, 523 U.S. 360, 363 (1998)(noting that the Export Clause "categorically bars Congress from imposing any tax on exports"); *United States v. IBM*, 517 U.S. at 848 (1996) (noting that the Export Clause "strictly prohibits any tax or duty, discriminatory or not, that falls on exports during the course of exportation"); *United States v. Hvoslef*, 237 U.S. at 13 (recognizing "the clear intent of the framers of the Constitution that the process of exporting the products of a state…should not be obstructed or hindered by any burden of taxation.").

In *Drummond,* this Court determined that OSM imposed the reclamation fee on coal when sold. A coal operator had challenged the validity of the 1982 amendment to OSM's regulation, on the ground that it "exceed[ed] the Secretary's statutory authority because it include[d] within the material taxed 'excess' moisture attributable to post-excavation rainfall or washing, which Drummond assert[ed] is not properly regarded as part of 'coal.'" 796 F.2d at 504. To determine whether OSM's regulation was *ultra vires*, the *Drummond* courts had to interpret the phrase "coal produced." The district court observed:

> 30 U.S.C. § 1232 states that a reclamation fee of 35 cents
> per ton of "coal *produced* by surface coal mining" shall

53

> be levied on all coal operators. (emphasis added). The term "produced" is ambiguous. "Production" could reasonably be interpreted to include the entire process of extracting and selling coal, complete from pit to buyer's door, or it could refer solely to the process of extraction. The latter interpretation would support the conclusion that impurities added after extraction, such as moisture, should not be taxed. The former interpretation would imply that the gross product sold to the buyer—even if it contains impurities and moisture—should serve as the basis for taxation.

*Drummond Coal Co. v. Hodel*, 610 F. Supp. 1489, 1497.

The district court upheld OSM's regulation imposing the reclamation fee on excess moisture because the "regulations adopt the first of the two possible interpretations of section 1232," *id*. at 1498 – *i.e.*, that "coal produced" includes "the entire process of extracting and selling coal." *Id*. at 1497. This Circuit affirmed, stating: "'Production' could reasonably be interpreted to include the entire process of extracting and selling coal, complete from pit to buyer's door, or it could refer solely to the process of extraction.'" 796 F.2d at 505 (quoting *Drummond*, 610 F. Supp. at 1497). This Court thereupon upheld OSM's regulation, adopting the construction that included the selling of coal, as a reasonable interpretation of the statute entitled to *Chevron* deference.

Consistent with *Drummond,* OSM's administrative practice, together with the language of the regulations, ties the imposition of the reclamation fee to the sale rather than the extraction of the coal. This confirms that OSM continues to

impose this tax on coal when sold, despite its present litigating position that the tax is imposed on extracted coal but its calculation and collection merely deferred until sale. In *Aracoma*, the government did not dispute that extracted coal and coal sold are distinct commercial products, the latter being the result of processing consisting of crushing, sizing, blending of raw coal to meet customer specifications, as well as the removal of rock and dirt and the addition of non-extracted materials. The calculation and collection of a tax on the processed product cannot reasonably constitute a deferral of a tax imposed on the raw coal.

Moreover, every point of nexus with the tax lies not with the extracted coal, but with the processed product at sale. The tax is never collected unless the coal is sold, the tax is calculated based on the weight and value of the coal sold (30 C.F.R. § 870.12(b)(3)), and even the <u>rate</u> of the tax is keyed to sale rather than extraction. For instance, when the statutory rate is reduced effective on a particular date, the reduced rate is applied to coal sold on or after that date, regardless of when it is mined (Payer Handbook, Add-9,10). And when the rate differs depending on the quality of the coal, the quality is measured at sale rather than at extraction. The government's own brief in *Wyodak* , 637 F.3d 1127, is revealing on this point:

> Interior interprets the regulatory requirement to calculate the reclamation fee at the time of the first sale, transfer, or use of the coal to mean that **all parts of the fee, including whether the coal is subject to the rate for lignite or non-lignite coal**, must be determined at the

55

> time of that first transaction. That is a reasonable reading
> of the regulatory requirement to determine the fee at the
> time of the first transaction and it must be given
> "controlling weight unless it is plainly erroneous or
> inconsistent with the regulation."

2010 WL 2397310 (C.A. 10) (Appellate Brief) (emphasis added).

That regulatory course of action cannot be, and is not, erased by the Federal Circuit when in *Consol V*, it mistakenly applied the doctrine of constitutional avoidance, and stated: "The regulations, like the statute, use the term 'coal produced,' and we conclude that this term in the regulation must be construed consistent with the identical term in the statute. 'Coal produced' applies to 'coal extracted' rather than coal sold.'" *Id. at 1382. Consol V* thus disregarded OSM's *actual* practice, recognized in *Drummond*, of imposing the tax upon coal when sold, and re-characterized the tax as a deferred assessment on the extraction of coal.

At the very least, consistent with its ruling in *Drummond*, this Circuit should hold that OSM has imposed its tax on coal when sold in the export stream. The Court should further hold that the agency's practice violates the Export Clause.

56

## CONCLUSION

For the foregoing reasons, Coal River respectfully requests that this Court reverse the district court's order granting defendants' motion for judgment on the pleadings dismissing the complaint, and that it remand this case to the district court for proceedings on the merits, consistent with this Court's holding that OSM imposes the reclamation fee on coal when sold in the export stream.

Respectfully submitted,

s/Steven H. Becker
Steven H. Becker
Attorney of Record
BECKER LAW FIRM PLLC
600 Third Avenue
New York, New York 10016
Telephone:  (212) 499-9098
Facsimile:  (212) 697-0164
Email:sbecker@customsandtaxlaw.com

John Y. Merrell, Jr.
MERRELL & MERRELL, P.C.
1495 Chain Bridge Road, Suite 201
McLean, Virginia 22101
Telephone: (703) 790-8440
Email:  john.merrell.jr.@merrelltaxlaw.com

*Counsel for Plaintiff-Appellant
        Coal River Energy, LLC*

August 22, 2013

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

 x   The brief contains  13,629    words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

 x   The brief has been prepared in a proportionally spaced typeface using MS Word 2007  in a 14 point Times New Roman font or

____ The brief has been prepared in a monospaced typeface using MS Word 2002  in a ___ characters per inch_____ font.

August 22, 2013_____                    /s/Steven H. Becker
                                           Steven H. Becker

# United States Court of Appeals
# for the District of Columbia Circuit

*Coal River Energy, LLC v. Sally Jewell, Secretary, U.S. Department of the Interior; et al.* No. 13-5119

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by Becker Law Firm PLLC, Attorneys for Plaintiff-Appellant to print this document.  I am an employee of Counsel Press.

On **August 22, 2013**, Counsel for Plaintiff-Appellant has authorized me to electronically file the foregoing **Brief of Plaintiff-Appellant** with the Clerk of Court using the CM/ECF System, which will serve, via e-mail notice of such filing, to any of the following counsel registered as CM/ECF users:

TARA KATHLEEN HOGAN
JEANNE EVELYN DAVIDSON
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, COMMERCIAL LITIGATION BRANCH
P.O. Box 480
Ben Franklin Station
Washington, DC  20044
(202) 514-7300
*Attorneys for Defendants-Appellees*

A courtesy copy has also been mailed to the above listed counsel.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via Express Mail.

August 22, 2013

/s/ Robyn Cocho
Robyn Cocho
Counsel Press

# ADDENDUM

## ADDENDUM OF PERTINENT STATUTES AND REGULATIONS

### 5 USC § 701 - Application; definitions

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

### 5 USC § 702 - Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein

(1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or

(2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

### 5 USC § 704 - Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for

1

ADD. 1

the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

## 28 USC § 1331 - Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## 28 USC § 2201 - Creation of remedy

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

## 28 USC § 2202 - Further relief

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

2

ADD. 2

**30 USC § 1211 - Office of Surface Mining Reclamation and Enforcement**

**(c) Duties of Secretary**

The Secretary, acting through the Office, shall—

(1) administer the programs for controlling surface coal mining operations which are required by this chapter; review and approve or disapprove State programs for controlling surface coal mining operations and reclaiming abandoned mined lands; make those investigations and inspections necessary to insure compliance with this chapter; conduct hearings, administer oaths, issue subpenas, and compel the attendance of witnesses and production of written or printed material as provided for in this chapter; issue cease-and-desist orders; review and vacate or modify or approve orders and decisions; and order the suspension, revocation, or withholding of any permit for failure to comply with any of the provisions of this chapter or any rules and regulations adopted pursuant thereto;

(2) publish and promulgate such rules and regulations as may be necessary to carry out the purposes and provisions of this chapter;

**30 USC § 1232 - Reclamation fee**

**(a) Payment; rate**

All operators of coal mining operations subject to the provisions of this chapter shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee of 28 cents per ton of coal produced by surface coal mining and 12 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, except that the reclamation fee for lignite coal shall be at a rate of 2 per centum of the value of the coal at the mine, or 8 cents per ton, whichever is less.

3

ADD. 3

**30 USC § 1276 - Judicial review**

(a) **Review by United States District Court; venue; filing of petition; time**

(1) Any action of the Secretary to approve or disapprove a State program or to prepare or promulgate a Federal program pursuant to this chapter shall be subject to judicial review by the United States District Court for the District which includes the capital of the State whose program is at issue. Any action by the Secretary promulgating national rules or regulations including standards pursuant to sections 1251, 1265, 1266, and 1273 of this title shall be subject to judicial review in the United States District Court for the District of Columbia Circuit. Any other action constituting rulemaking by the Secretary shall be subject to judicial review only by the United States District Court for the District in which the surface coal mining operation is located. Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with law. A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day. Any such petition may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary.


**30 USC § 1292 - Other Federal laws**

(a) **Construction of chapter as superseding, amending, modifying, or repealing certain laws**

Nothing in this chapter shall be construed as superseding, amending, modifying, or repealing the Mining and Minerals Policy Act of 1970 (30 U.S.C. 21a), the National Environmental Policy Act of 1969 (42 U.S.C. 4321–47), or any of the following Acts or with any rule or regulation promulgated thereunder, including, but not limited to—

(1) The Federal Metal and Nonmetallic Mine Safety Act (30 U.S.C. 721–740).

4

ADD. 4

(2) The Federal Coal Mine Health and Safety Act of 1969 (83 Stat. 742) [30 U.S.C. 801 et seq.].

(3) The Federal Water Pollution Control Act (79 Stat. 903), as amended [33 U.S.C. 1251 et seq.], the State laws enacted pursuant thereto, or other Federal laws relating to preservation of water quality.

(4) The Clean Air Act, as amended [42 U.S.C. 7401 et seq.].

(5) The Solid Waste Disposal Act [42 U.S.C. 6901 et seq.].

(6) The Refuse Act of 1899 (33 U.S.C. 407).

(7) The Fish and Wildlife Coordination Act of 1934 (16 U.S.C. 661–666c).

(8) The Mineral Leasing Act of 1920, as amended (30 U.S.C. 181 et seq.).

## 30 C.F.R. § 870.12 - Reclamation fee

(a) The operator shall pay a reclamation fee on each ton of coal produced for sale, transfer, or use, including the products of in situ mining.

(b) The fee shall be determined by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the operator.

(1) The initial bona fide sale, transfer of ownership, or use shall be determined by the first transaction or use of the coal by the operator immediately after it is severed, or removed from a reclaimed coal refuse deposit.

(2) The value of the coal shall be determined F.O.B. mine.

(3) The weight of each ton shall be determined by the actual gross weight of the coal.

(i) Impurities that have not been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator, excluding excess moisture for which a reduction has been taken pursuant to § 870.18, shall not be deducted from the gross weight.

5

ADD. 5

(ii) Operators selling coal on a clean coal basis shall retain records that show run-of-mine tonnage, and the basis for the clean coal transaction.

(iii) Insufficient records shall subject the operator to fees based on raw tonnage data.

(c) If the operator combines surface mined coal, including reclaimed coal, with underground mined coal before the coal is weighed for fee purposes, the higher reclamation fee shall apply, unless the operator can substantiate the amount of coal produced by surface mining by acceptable engineering calculations or other reports which the Director may require.

(d) The reclamation fee shall be paid after the end of each calendar quarter beginning with the calendar quarter starting October 1, 1977.

### § 870.13 Fee rates.

(a) *Fees for coal produced for sale, transfer, or use through September 30, 2007*

(1) *Surface mining fees.* The fee for anthracite, bituminous, and subbituminous coal, including reclaimed coal, is 35 cents per ton unless the value of such coal is less than $3.50 per ton, in which case the fee is 10 percent of the value.
(2) *Underground mining fees.* The fee for anthracite, bituminous, and subbituminous coal is 15 cents per ton unless the value of such coal is less than $1.50 per ton, in which case the fee is 10 percent of the value.
(3) *Surface and underground mining fees for lignite coal.* The fee for lignite coal is 10 cents per ton unless the value of such coal is less than $5.00 per ton, in which case the fee charged is 2 percent of the value.
(4) *In situ coal mining fees.* The fee for in situ mined coal, except lignite coal, is 15 cents per ton based on Btu's per ton in place equated to the gas produced at the site as certified through analysis by an independent laboratory. The fee for in situ mined lignite is 10 cents per ton based on the Btu's per ton of coal in place equated to the gas produced at the site as certified through analysis by an independent laboratory.
(b) *Fees for coal produced for sale, transfer, or use from October 1, 2007, through September 30, 2012.* Fees for coal produced for sale, transfer, or use from October 1, 2007, through September 30, 2012, are shown in the following table:

6

ADD. 6

| Type of fee | Type of coal | Amount of fee |
|---|---|---|
| (1) Surface mining fee | Anthracite, bituminous, and subbituminous, including reclaimed | (i) If value of coal is $3.15 per ton or more, fee is 31.5 cents per ton. (ii) If value of coal is less than $3.15 per ton, fee is 10 percent of the value. |
| (2) Underground mining fee | Anthracite, bituminous, and subbituminous | (i) If value of coal is $1.35 per ton or more, fee is 13.5 cents per ton. |
| | | (ii) If value of coal is less than $1.35 per ton, fee is 10 percent of the value. |
| (3) Surface and underground mining fee | Lignite | (i) If value of coal is $4.50 per ton or more, fee is 9 cents per ton. (ii) If value of coal is less than $4.50 per ton, fee is 2 percent of the value. |
| (4) In situ coal mining fee | All types other than lignite | 13.5 cents per ton based on Btu's per ton in place equated to the gas produced at the site as certified through analysis by an independent laboratory. |
| (5) In situ coal mining fee | Lignite | 9 cents per ton based on the Btu's per ton of coal in place equated to the gas produced at the site as certified through analysis by an independent laboratory. |

(c) *Fees for coal produced for sale, transfer, or use from October 1, 2012, through September 30, 2021.* The fees for coal produced for sale, transfer, or use from October 1, 2012, through September 30, 2021, are shown in the following table:

| Type of fee | Type of coal | Amount of fee |
|---|---|---|
| (1) Surface mining fee | Anthracite, bituminous, and subbituminous, including reclaimed | (i) If value of coal is $2.80 per ton or more, fee is 28 cents per ton. (ii) If value of coal is less than |

7

ADD. 7

| | | |
|---|---|---|
| | coal | $2.80 per ton, fee is 10 percent of the value. |
| (2) Underground mining fee | Anthracite, bituminous, and subbituminous | (i) If value of coal is $1.20 per ton or more, fee is 12 cents per ton. |
| | | (ii) If value of coal is less than $1.20 per ton, fee is 10 percent of the value. |
| (3) Surface and underground mining fee | Lignite | (i) If value of coal is $4.00 per ton or more, fee is 8 cents per ton. |
| | | (ii) If value of coal is less than $4.00 per ton, fee is 2 percent of the value. |
| (4) In situ coal mining fee | All types other than lignite | 12 cents per ton based on Btu's per ton in place equated to the gas produced at the site as certified through analysis by an independent laboratory. |
| (5) In situ coal mining fee | Lignite | 8 cents per ton based on the Btu's per ton of coal in place equated to the gas produced at the site as certified through analysis by an independent laboratory. |

8

ADD. 8

**Chapter 1**    **Filing an OSM-1 Form**

### How are coal weights (tonnages) determined for AML fees?

Section 870.12(b) of 30 CFR states:

> The fee shall be determined by the weight and value [of the coal] at the time of initial bona fide sale, transfer of ownership, or use by the operator.

Section 870.12(b)(1) of 30 CFR states:

> The initial bona fide sale, transfer, or use of the coal shall be determined by the first transaction or use of the coal by the operator immediately after it is severed, or removed from a reclaimed coal refuse deposit.

A ton is defined as 2000 pounds (0.90718 metric ton).

### What is the rate of the reclamation fee for coal sold, transferred, or used within a quarter?

The regulations set different standard (per ton) fee rates for surface mined coal, underground mined coal, and lignite coal. Additionally, ad valorem (percentage based) fees may apply in some cases with low value coal sales. The following notice shows the applicable fee rates.

#### NOTICE OF COAL FEE REAUTHORIZATION

#### January 10, 2007

On December 20, 2006, President Bush signed legislation that renews the Abandoned Mine Land Reclamation program through September 30, 2021. Among other things, the new law reduces the coal reclamation fee rates beginning October 1, 2007.

12

ADD. 9

*Fees on all coal sold, transferred, or used <u>through September 30, 2007</u> must be paid at the current rate of:

- Surface-mined coal (except lignite) – *35* cents per ton

- Underground-mined coal (except lignite) – *15* cents per ton

- Lignite – *10* cents per ton

- The alternative Ad Valorem rate of *10%* of the value also continues to be in effect

*Effective <u>October 1, 2007 through September 30, 2012</u> the coal reclamation fee rates for each ton of coal used, sold, or transferred are as follows:

- Surface-mined coal (except lignite) – *31.5* cents per ton

- Underground-mined coal (except lignite) – *13.5* cents per ton

- Lignite – *9* cents per ton

*Effective <u>October 1, 2012 through September 30, 2021</u> the coal reclamation fee rates for each ton of coal used, sold, or transferred are as follows:

- Surface-mined coal (except lignite) –*28* cents per ton

- Underground-mined coal (except lignite) –*12* cents per ton

- Lignite – *8* cents per ton

ADD. 10